UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| DUSTIN HARBIN and JIMMY PRUITT, on behalf of plaintiffs and the class defined herein, <br><br> Plaintiffs, <br><br> v. <br><br> EMERGENCY COVERAGE CORPORATION, and ACCOUNT RESOLUTION TEAM, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 3:16-CV-125-TRM-HBG

Jury Trial Demanded

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY
A CLASS, APPOINT PLAINTIFFS AS CLASS REPRESENTATIVES,
AND THEIR COUNSEL AS CLASS COUNSEL**

**INTRODUCTION**

Plaintiffs allege that Defendants Emergency Coverage Corporation (ECC) and Account Resolution Team, Inc. (ART) have attempted to collect excessive post judgment interest in two ways. First, the amount charged for interest is in excess of the legal interest rate. Second, because the Defendants calculate the interest due to the end of each month and not until the day of the garnishment.[1] Plaintiffs seek restitution of the amounts unlawfully collected by the ECC and ART under state law claims. Additionally, Plaintiffs assert a claim against ART for communicating demands for payment of amounts not legally owed by Plaintiffs and the putative class members under the Fair Debt Collection Practices Act ("FDCPA").

Plaintiffs seek to certify a class consisting of the people who have been charged excess interest by Defendants. The class includes:

---
[1] For example, if the garnishment is issued on the 15th day of the month, the interest that is added to the garnishment is calculated to the end of that month.

1

(a) All persons sued by Defendants;

(b) In the General Sessions Court of Hamblen County, Tennessee;

(c) That had garnishments issued against their wages that included amounts of postjudgment interest or fees that exceeds the amount allowed under Tennessee state law;

(d) That made payments to Defendants as a result of the wrongful garnishments issued to their employers by garnishment of wages or direct payment to the clerk;

(e) In the six years preceding the filing of this action, for all persons as to the state law claims; and

(f) In the one year preceding the filing of this action, and on or before a date 20 days after the filing of this action, as to the FDCPA claims.

The parties have stipulated to the following facts in connection with the Motion to Certify a Class:

1. ART filed 115 requests for the issuance of garnishments on behalf of ECC with the Hamblen County General Sessions Court Clerk between March 16, 2015 and April 2016 ("the garnishments").

2. ART calculated the interest amount on the 115 garnishment requests utilizing the interest rate of 5.25%.

3. ART calculated the interest amount on the 115 garnishment requests with the last day being the end of the month in which the garnishment requests were filed, rather than through the date when the garnishment requests were filed.

4. Out of the 115 garnishment requests, ART added to 76 of them a $10.00 "process serving fee" to the amount claimed on the interest line of the garnishment request forms for each of the garnishments.

5. Out of the 76 garnishment requests that added a $10.00 "process serving fee", 61 resulted in the collection of the $10.00 "process serving fee". The other 15 requests did not result in the collection of the $10.00 "process serving fee".

**See Stipulation of Facts filed as exhibit 1 to this memorandum (exh. 1).**

As demonstrated by these stipulated facts, Plaintiffs are not alone. Defendants have treated Plaintiffs and other individuals the same way. Plaintiffs and 113 others were charged interest with the last day being the end of the month in which the garnishment requests were filed, rather than through the date when the garnishment requests were filed. **See exh. 1, ¶ 3.** Plaintiffs and 59 others were charged and paid a $10.00 process serving fee. **See exh. 1, ¶ 5.**[2]

The controlling and predominate issues in this litigation is whether ECC and ART's practice of calculating interest, that exceeds the statutory limits either by including excess days or by adding a "service processing fee" to judgments is unlawful. If it is unlawful, then it supports Plaintiffs' state law claims for restitution against Defendants as well as the FDCPA claim against ART. The merits of Plaintiffs' contention, however, does not need to be decided for the Court to decide whether it should certify a class in this case. That decision is based on the provisions of Rule 23.

**I.     Requirements of Rule 23(a).**

Rule 23 (a) sets forth 4 preliminary qualifications for certification of a class:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or

---

[2] Plaintiffs contend that while Defendants label the $10.00 charge added as a "service processing fee" since there is no legal provision for Defendants to charge a "service processing fee", the extra $10.00 can be considered interest. However, Plaintiffs have amended their class definition to include those persons who were charged "amounts of postjudgment interest <u>or fees</u> that exceeds the amount allowed under Tennessee state law. **See Class Definition (c) above.**

> defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

These are often referred to, respectively, as numerosity, commonality, typicality and adequacy. Each is addressed below and is met by the proposed class.

**A. Numerosity.**

A class consisting of as few as 35 persons has been found to meet the numerosity requirement. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012). Other Circuit Courts have allowed classes to proceed with as few as 18 persons. *See Cypress v. Newport News General and Nonsectarian Hospital Ass'n,* 375 F.2d 648, 653 (4th Cir. 1967). "It is not required that the precise number of class members be known at the time of certification." *Baker v. Comprehensive Employee Solutions* 227 F.R.D. 354, 358 (D. Utah, 2005).

There are 113 persons, in addition to the Plaintiffs, that were charged interest with the last day being the end of the month in which the garnishment requests were filed, rather than through the date when the garnishment requests were filed. **See exhibit 1, ¶ 3.** There are 59 persons, in addition to the Plaintiffs charged and paid a $10.00 process serving fee. **See exhibit 1, ¶ 5.** Either number of persons is sufficient to meet the numerosity requirement.

**B. Commonality.**

The common legal issue at the heart of this case is whether the interest or fees charged by Defendants in connection with garnishments exceed the legal limit. The claims asserted by Plaintiffs individually and on behalf of the Class will be determined by the resolution of this legal issue.

As the Supreme Court explained in *Dukes v. Walmart*, to demonstrate commonality, plaintiff must show that class members have suffered the same injury. *Dukes,* 131 S.Ct. 2541, 2551 (2011). "Their claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit. *Id. See, Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852-53 (6th Cir. 2013).

The Court's ultimate determination of the legal issue as to whether the Defendants charged the Plaintiffs and the other putative class members amounts in excess of the legal limit will resolve the issues before this Court and for the class in "one stroke".

**C.    Typicality.**

As explained in a number of cases, the issues of commonality and typicality tend to merge. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157–158, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). The Sixth Circuit Court of Appeals held:

> These two concepts of commonality and typicality "tend to merge" in practice because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 131 S.Ct. at 2551 n. 5.

*In re Whirlpool, supra*, at 852-53.

In short, the inquiry is whether Plaintiffs are class members - can they assert the same important common, controlling issue as the class members? This requirement is met here since both Plaintiffs were charged excessive interest.

D.  **Adequacy of Representation.**

1.  **Class Representative**

The Sixth Circuit Court of Appeals also held in *In re Whirlpool*, commonality, typicality and adequacy also tend to merge in connection with determining the adequacy of the plaintiff as the class representative. *In re Whirlpool,* 722 F.3d at 853 ("In addition, commonality and typicality tend to merge with the requirement of adequate representation"). In *Young, supra*, 693 F.3d 532, 542, the Sixth Circuit reiterated its holding that "'[a] necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members.' *Sprague*, 133 F.3d at 399. A plaintiff is adequate if he does not have interests antagonistic to the class. "Rule 23(a)(4) allows certification only if 'the representative parties will fairly and adequately protect the interests of the class.' Fed. R. Civ. P. 23 (a). This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115 (1940); 1 Newberg, supra, § 3.21, at 3-125. *See also Smith v. Babcock*, 19 F.3d 257, 264 n.13 (6th Cir. 1994)('no class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard')." *In re American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996); *See also Vassalle v. Midland Funding, LLC*, 708 F. 3d 747, 757 (6th Cir. 2013). The requirement of adequate representation is not a search for a perfect plaintiff with an unassailable claim. The requirement merely assures that absent class members that will be bound by the result are protected by a vigorous and competent prosecution of the case by someone who shares their interests. See 1 Newberg and A. Conte, Newberg on Class Actions, § 3:21 (4th ed. 2004).

These Plaintiffs do not have interests antagonistic to the unnamed class members. The Plaintiffs affirmatively state they do not have interests adverse to the Class members. **See Declarations of Plaintiffs filed as Exhibits 2 and 3 to this memorandum (exhs. 2 and 3).** They have the same claims and the same incentives to prevail, as any class member would have.

   2.   **Adequacy of Counsel.**

The adequacy of counsel issue is now addressed by Rule 23 (g) which provides:

(g)  Class Counsel.

   (1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

   (A)  must consider:

   (i)   the work counsel has done in identifying or investigating potential claims in the action;

   (ii)  counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

   (iii) counsel's knowledge of the applicable law; and

   (iv)  the resources counsel will commit to representing the class;

   (B)  may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

   (C)  may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

   (D)  may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

   (E)  may make further orders in connection with the appointment.

Consideration of each of these factors warrants appointment of Plaintiffs' counsel as class counsel in this matter. The claims were identified because Plaintiffs' counsel practices are devoted to advocating for and representing consumers. Plaintiffs' counsel stay well educated on current issues in the consumer law area by litigating cases, attending conferences as well as speaking on the law related to the claims. Plaintiffs' counsel has handled numerous individual and class cases asserting FDCPA claims. *See e.g, Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d.719 (D. Md. 2011) (class FDCPA claims certified and summary judgment obtained for the class); *Johnson v. Midland Funding, LLC.*, 09-2391-ELH, Doc. 41 (D. Md. 2011). **See Declarations of Scott C. Borison, Peter A. Holland, and Alan C. Lee, filed as Exhibits 4, 5 and 6, respectively, to this memorandum (exhs. 4, 5, and 6).** Plaintiffs' counsel includes counsel experienced in class actions as well as consumer law. Plaintiffs' counsel, Scott Borison and Peter Holland, have previously been found to be adequate class counsel and has served as lead class counsel in numerous cases involving consumer frauds and other legal violations. And, co-counsel has also tried class claims before a jury. **See exhs. 4 and 5.**

Identifying Plaintiffs' claims was possible because of counsel's active involvement in consumer law issues. Since the filing, Plaintiffs' counsel has investigated Defendants and their practices. Plaintiffs' counsel has and will commit sufficient resources to prosecute the case. **See exhs. 4, 5 and 6 hereto.**

II.     **Rule 23(b)(3) class action.**

A class action under Rule 23(b)(3) is maintainable if:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The

matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The requirements of (b)(3) of Rule 23 are commonly referred to as predominance and superiority.

### A. Predominance.

The predominance standard is akin to the commonality required by 23(a)(2). The difference is that the common issue necessary to satisfy Rule 23(a)(2) must also be found to be the predominant issue in the case. Of course, this does not mean that there are no other issues at all. However, Plaintiffs submit that the predominance of whether or not Defendants' practices of charging interest or other fees in connection with garnishments exceeded the legal limit. This is a prime example of an issue that predominates over other issues.

### B. Superiority.

Superiority is the second prong of Rule 23(b)(3). Each of the issues identified support certification here.

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions.

Whether or not class members want to file their own actions is often marked by a defendant appearing to advocate out of concern for the class members and preserving their rights to sue the defendant on an individual basis. The Court in *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968) recognized the concern expressed by a defendant may be feigned since what

defendant would want a slew of individual cases if the individuals were truly in a position to pursue individual claims:

> The lower court indicated that efficiency could best be served in the instant case by allowing intervention. However, the procedures available for handling proliferated litigation, including intervention, presuppose 'a group of economically powerful parties who are obviously able and willing to take care of their own interests individually * * *.' Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 298 (1966). **Yet if the purchasers fit this description, it is to be supposed that the defendants would join in demanding a class action since they could scarcely desire to defend separate actions by each party they have now admittedly injured.**

*Esplin v. Hirschi*, 402 F.2d at 101. (emphasis added)

In *Esplin* the class members were concerned with investments that they had made and the Court posited that the class members would not be in position to pursue individual claims. Here, the class members have all suffered financial setbacks that led to a default on accounts allegedly acquired by Defendant – they are not in a position to pursue to their own cases. Therefore, the interest of members of the class in individually controlling the prosecution or defense of separate actions is minimal in this circumstance. This is borne out by the lack of any other litigation.

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class

The Plaintiffs are unaware of other litigation seeking to hold Defendants accountable for its practices of adding interest in connection with garnishments.

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

This action is on behalf of Tennessee residents. It is desirable for the action to be litigating the claims before this Court that sits in the State of Tennessee.

(D) the difficulties likely to be encountered in the management of a class action.

The claim rests on the predominant issue of the Defendants' practices of adding interest or fees to garnishments. It can likely be decided on a dispositive motion since there is no genuine dispute that Defendants engaged in that practice. There do not appear to be any difficulties in managing the proposed class action.

## CONCLUSION

All of the requirements of Rule 23 (a) are met by the proposed class. Plaintiffs have also demonstrated that the class is properly certified under Rule 23 (b)(3). Therefore, Plaintiffs' motion to certify a class, appoint Plaintiffs as class representatives and their counsel as class counsel should be granted.

February 22, 2017                    Respectfully submitted,

**DUSTIN HARBIN**
**JIMMY PRUITT**


s/      Alan C. Lee
Alan C. Lee, BPR #012700
PO Box 1357
Talbott, TN 37877-1357
(423) 581-0924
aleeattorney@gmail.com


Scott C. Borison, CA Bar #28956
1900 S. Norfolk St., Suite 350
San Mateo CA 94403
(301) 620-1016
borison@legglaw.com

Peter A. Holland, MD Bar #10866
The Holland Law Firm, P.C.
914 Bay Ridge Road, Ste. 230
Annapolis, MD 21403
(410) 280-6133
peter@hollandlawfirm.com

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic case filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic case filing system.

s/ Alan C. Lee
Alan C. Lee, Attorney for Plaintiffs

12
Case 3:16-cv-00125-TRM-HBG   Document 22   Filed 02/22/17   Page 12 of 12   PageID #: 90